IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
|     Plaintiff-Respondent, | § | |
| | § | |
| v. | § | Cr. No. C-11-795 |
| | § | (Ca. No. C-12-359) |
| STEVEN REECE CLARK, | § | |
| | § | |
|     Defendant-Movant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Steven Reece Clark's (Clark) motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, along with his Memorandum of Law in support. D.E. 57, 62.[1] The government has responded and defense counsel filed his Affidavit. D.E. 77, 83. Clark filed a reply and supplemental reply. D.E. 84, 87.

### I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### II. FACTS AND PROCEEDINGS

Clark was arrested by the Beeville Police Department in June 2011 after a traffic stop in which he was found to have violated the prohibition on Fraudulent Use or Possession of Identifying Information. D.E. 1. With him were two bags of Comfort Inn Suites receipts from a San Antonio location with credit card imprints. A Green Dot pre-paid Visa card was also found in Clark's wallet with an account number taped to the front of the card. Id. Several days after Clark's arrest, federal agents interviewed Clark after he waived his Miranda rights. Id. Clark stated that he owned the

---

[1] Docket entry references are to the criminal case.

vehicle he was driving when he was stopped, but the items in the vehicle belonged to Robert Isbell. Id. Inside a black rolling bag in the car, officers found a printer. Clark denied ownership of the bag, but admitted he bought the printer and magnetic ink. Id.

The agents reviewed some of the receipts seized by the Beeville Police Department. Agents contacted American Express Security regarding one of the credit cards. They later received information identifying the holder of the card and stating that $4494.00 in charges had been attempted/processed at J.C. Penney's, Best Buy, and Valero Stores. Id. The card holder denied knowing Steven Clark and denied giving him permission to use the card. Id. The original Complaint charged Clark with Possession with Intent to Defraud 21 Access Devices listed in the Complaint in violation of 18 U.S.C. § 1029(a)(3), and Fraud and Related Activity in Connection with Access Devices.

Clark first appeared in federal court pursuant to a Writ of Habeas Corpus ad Prosequendum. D.E. 3. Clark was appointed counsel at that time. D.E. 5.

Clark was indicted on August 10, 2011. D.E. 10. He was charged in a three count indictment with intent to defraud, produce, use, or traffic in one or more counterfeit access devices, a Green Dot Visa Gold card and a Vanilla Visa card, in violation of 18 U.S.C. § 1029(a)(1). Count Two charged Clark with possession with intent to defraud 15 or more devices which are counterfeit or unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3), and listed six American Express numbers, nine Visa card numbers, and three Master Card numbers. Count Three charged Clark with possession and use without authority of a means of identification of another person during and in relation to a felony violation of 18 U.S.C. § 1028A. It listed an American Express account number. Id.

Clark was arraigned shortly after he was indicted. D.E. 12, Minute Entry August 16, 2011.

Clark's appointed counsel was replaced by different appointed counsel before the pretrial conference. D.E. 20, 21, 22. At the pretrial conference, the Court learned that newly appointed counsel had a conflict. Counsel was removed. New counsel was appointed. Minute Entry November 2, 2011, D.E. 26, 30.

Rearraignment was held on December 19, 2011. D.E. 32. Clark pled guilty pursuant to a plea agreement with the government. Id., D.E. 33. In exchange for Clark's guilty plea to Count 1 and his waiver of appellate and § 2255 rights, the government agreed to dismiss Counts 2 and 3, to recommend that Clark receive maximum credit for acceptance of responsibility, and to recommend a sentence within the guideline range. D.E. 33 at ¶¶ 1-2, 7. The plea agreement waiver of Clark's right to appeal and to file a § 2255 motion stated:

> Defendant waives his/her right to appeal both the conviction and the sentence imposed. The Defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal <u>only</u> (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United States, as set forth in 18 U.S.C. § 3742(b). Additionally, the defendant is aware that 28 U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

Id. at ¶ 7 (emphasis in original). The agreement was signed by Clark and his counsel. Id. at p. 5.

At rearraignment, the Court questioned Clark about the indictment. Clark testified that he read it, discussed it with counsel and understood the charges against him.[2] He was satisfied with

---

[2] 5 THE COURT: All right. Did you receive a copy
6 of your Indictment?
7 DEFENDANT CLARK: Yes, sir.
8 THE COURT: Did you read it?
9 DEFENDANT CLARK: Yes, sir.

3

counsel's representation. D.E. 78 at 5. Next, the Court questioned Clark under oath to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily waiving his rights to attack his conviction and sentence on appeal or by a motion to vacate sentence.

> 23 I was handed this Plea Agreement that you
> 24 have entered into. On the last page there are some
> 25 signatures. Did you sign it voluntarily?
> 1 DEFENDANT CLARK: Yes, sir.
> 2 THE COURT: Did you read it and discuss it with
> 3 Mr. Cromwell before you signed it?
> 4 DEFENDANT CLARK: Yes, I did.
> 5 THE COURT: Do you feel like you understand the
> 6 terms of this agreement?
> 7 DEFENDANT CLARK: Yes, sir.
> 8 THE COURT: Did anyone offer you anything to
> 9 get you to plead guilty, other than what is in the
> 10 agreement?
> 11 DEFENDANT CLARK: No, sir.
> 12 THE COURT: In paragraph 7 there is a waiver of
> 13 certain appeal rights. Were you aware of that?
> 14 DEFENDANT CLARK: Yes, sir.
> 18 THE COURT: Were you aware that you not only
> 19 waived your right to directly appeal your conviction and
> 20 sentence, but you also waived your right to collaterally
> 21 attack it under 28 United States Code Section 2255?
> 22 Were you aware of that?
> 23 DEFENDANT CLARK: What's the meaning of what
> 24 you just said right there?
> 25 THE COURT: I'm sorry?
> 1 DEFENDANT CLARK: What you just said, I
> 2 didn't --
> 3 THE COURT: When someone is convicted --
> 4 DEFENDANT CLARK: Yes, sir.
> 5 THE COURT: -- of a crime, either by a jury or
> 6 by pleading guilty --
> 7 DEFENDANT CLARK: Yes, sir.

---

10 THE COURT: Discuss it with Mr. Cromwell?
11 DEFENDANT CLARK: Yes, sir.
12 THE COURT: Do you understand the charges
13 against you?
14 DEFENDANT CLARK: Yes, I do.

D.E. 78 at 5.

> 8 THE COURT: -- they have a right to directly
> 9 appeal it to the Court of Appeals, and there is a time
> 10 period for doing that immediately after you are
> 11 convicted or you plead. You can appeal your convictions
> 12 as well as your sentence. Now, later you can also
> 13 attempt to set aside your conviction and sentence
> 14 through a process similar to filing a habeas action.
> 15 It's a Section 2255 action where this comes after the
> 16 appeal process has expired. So there are two ways that
> 17 you can try to set aside your conviction, and the second
> 18 one is generally based on some constitutional violation
> 19 that may have occurred outside of the court proceeding.
> 20 Were you aware that you waived both ways
> 21 to set aside your conviction and sentence?
> 22 DEFENDANT CLARK: Yes, sir.
> 23 THE COURT: All right. Do you have any
> 24 questions you want to ask me about the waiver and how it
> 25 may affect your rights?
> 1 DEFENDANT CLARK: No, sir.
> 2 THE COURT: Other than what you've already
> 3 asked?
> 4 DEFENDANT CLARK: No, sir.

Id. at 6-8.

    The Court advised Clark of the maximum punishment of up to 10 years imprisonment, a fine of not more than $250,000, no more than 3 years supervised release, and a special assessment of $100. Id. at 8. The Court described supervised release and the sentencing process. Id. at 8-9. Clark testified he understood. Id. at 9. The Court further informed Clark of the various trial rights available to him; he testified that he understood those rights and understood that if he pleaded guilty he would be giving up those trial rights. Id.

    The government provided a factual recitation regarding Count One. Id. at 11-13. During that recitation, the government represented that 248 credit card numbers were on the receipts found in Clark's possession. Id. Clark agreed to the government's recitation and pled guilty. Id. at 13.

**B.**    **Presentence Investigation Report and Sentencing**

At the conclusion of rearraignment, the Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report (PSR). D.E. 34. The PSR recited that the receipts in the bags from the San Antonio hotel "revealed a total of 498 individual account numbers. The investigation revealed that 22 of these account numbers had been used, resulting in a total actual loss of $49,980.61." Id. at ¶ 7. The PSR calculated Clark's base offense level as 6 pursuant to § 2B1.1(a)(2) of the sentencing guidelines. D.E. 35 at ¶ 13. The base level was enhanced by 12 points pursuant to § 2B1.1, Application note 3(f)(i), due to relevant conduct and because the intended loss exceeded $200,000, by 2 more points for the number of victims pursuant to § 2B1.1(b)(2)(A), and by an additional 2 points because the offense involved the production or trafficking of unauthorized or counterfeit devices pursuant to § 2B1.1(b)(11)(B)(i). Id. at ¶¶ 14-20. The total offense level was 19 after credit for acceptance of responsibility. Id. at ¶¶ 21-24.

Clark had several previous criminal convictions that scored 15 criminal history points, including 2 points because he was on parole at the time of this offense, that resulted in application of criminal history category VI. Id. at ¶¶ 26-34. The resulting guideline range was a term of imprisonment of 63 to 78 months. Id. at ¶¶ 48-49. Restitution was estimated to be due in the amount of $1,111. Id. at ¶ 62.

Sentencing was held in March 2012. Minute Entry March 20, 2012. Clark testified that he had reviewed the PSR and discussed it with counsel. D.E. 79 at 3. The defense filed no objections. Id. at 8. The government urged the Court to include in the restitution amount losses from the credit card identified in Count 1 of the indictment that were listed in paragraph seven of the PSR. Id. at 9. The Probation Department recalculated the total amount of restitution at $3,606. Id. The Court sentenced Clark to 70 months imprisonment, followed by 3 years supervised release, $3,606 in restitution, no fine, and a special assessment of $100. Id. at 10-11. The Court reminded Clark of his

waiver of appeal. Id. at 12. The government moved to dismiss the remaining counts against Clark. Id. Judgment was entered March 23, 2012. D.E. 40. Clark filed a letter with the Court that was construed to be a notice of appeal. D.E. 42. Shortly thereafter, Clark moved to withdraw his notice of appeal, which the Court granted. D.E. 46, 47. The Clerk received Clark's § 2255 motion on November 21, 2012. D.E. 57. It is timely.

### III. MOVANT'S ALLEGATIONS

Clark complains that the relevant conduct attributed to him in the PSR doubled the number of credit card numbers he pled guilty to at rearraignment. He further complains that his attorney did not object, despite Clark's request that counsel do so. Clark further complains that the receipts in the bags included duplicate receipts with the same credit card numbers. D.E. 57 at 5-6. Clark's memorandum in support also claims that counsel was ineffective on the ground that he failed to familiarize himself with the facts before advising Clark to plead guilty. D.E. 62 at 2. Clark further complains that counsel deceived and misled him by telling him that the 498 credit card numbers included numbers involved in an additional scheme.[3] Clark finally asserts that counsel is not licensed in Texas. D.E. 62 at 6.

The government's response urges this Court to enforce Clark's waivers of his right to appeal or to collaterally attack his sentence pursuant to 28 U.S.C. § 2255. D.E. 83 at 5-9. Alternatively, the government requests that the Court deny the motion on the grounds that it is without merit and raises claims of sentencing error that are not cognizable in these proceedings. Id. at 15-18.

Clark filed a reply in which he contests statements in counsel's affidavit. D.E. 84.

### IV. DISCUSSION

---

[3] Robert Isbell and another person were charged in a different indictment with financial crimes arising out of the theft and use of the receipts from the San Antonio Comfort Inn.

A.   **28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

B.   **Ineffective Assistance of Counsel**

An ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under Strickland, the movant must demonstrate that counsel's error led to some increase in the length of his imprisonment. Glover v. United States, 531 U.S. 198, 203 (2001); United States v. Herrera, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other.  Armstead v.

8

Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

### C. Waiver of Right to File § 2255 Motion

Clark claims in part that his attorney provided ineffective assistance before his guilty plea by failing to familiarize himself with the facts of Clark's case before encouraging Clark to plead guilty. The Court construes this claim as a challenge to the validity of Clark's guilty plea. Clark waived his right to appeal or to file a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 as part of his plea agreement with the government.

Clark's claims of ineffective assistance do not automatically relieve him of his waivers. United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself").[4] Although a defendant's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. United States v. Diaz, 733 F.2d 371, 373-74 (5th Cir. 1979). A defendant must show such a strong degree of misunderstanding, duress, or misrepresentation by others that his plea would become a constitutionally inadequate basis for imprisonment. Id. (citing Blackledge v. Allison, 431 U.S. 63, 75 (1977)).

The record of Clark's rearraignment confirms that he understood the charges against him,

---

[4] In White, the Court decided there was "no need to except ineffective assistance of counsel claims from the general rule allowing defendants to waive their statutory rights so that they can reach a plea agreement if they wish. The Sixth Amendment right to effective assistance of counsel may also be waived, and thus need not be treated any differently." Id. at 343 (internal citations omitted).

understood the rights he was waiving and understood his maximum sentence. Rearraignment thus establishes that Clark was advised of the core issues to establish a voluntary plea. United States v. Gracia, 983 F.2d 625, 627–28 (5th Cir. 1993) ("When considering challenges to guilty plea proceedings, we have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea."). Compliance with the admonishments required under Rule 11 of the Federal Rules of Criminal Procedure provides "prophylactic protection for the constitutional rights involved in the entry of guilty pleas." See id. at 627.

Clark also testified that he understood his waiver of appeal and post-conviction challenge and had discussed these waivers with counsel before he signed the plea agreement. D.E. 78 at 6-8, see Part II, supra. at 4-5. He asked the Court to clarify the waiver of post-conviction right to challenge his conviction and sentence, but after the Court did so, Clark had no more questions regarding the effect of the waivers for the Court. D.E. 78 at 8, see Part II, supra. at 5.

Clark's sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge, 431 U.S. at 74)). "Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Because Clark's waiver was knowing and voluntary, he gave up the rights he now seeks to assert. The Court does not reach the merits of Clark's claims because they fall within the scope of his waiver. See United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing voluntary and knowing waiver of § 2255 rights).

### D. Counsel's Authorization to Practice in Texas

As part of his complaints, Clark states that his counsel is not licensed to practice in Texas. D.E. 62 at 6. According to the records maintained by the District Clerk, counsel is licensed in

Oklahoma and admitted to practice in the federal courts in the Southern District of Texas.

### V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Clark has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Clark is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor

do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, Clark's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 57) is **DENIED**, and he is **DENIED** a Certificate of Appealability

It is so **ORDERED.**

**SIGNED** on this 23rd day of April, 2013.

*John D. Rainey*
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE